IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-401

 No. COA20-594

 Filed 3 August 2021

 Wake County, No. 17 CVD 4251

 MICHAEL PUTNAM, Plaintiff,

 v.

 REBECCA PUTNAM, Defendant.

 Appeal by Defendant from order entered 11 February 2020 by Judge Christine

 Walczyk in Wake County District Court. Heard in the Court of Appeals 25 May 2021.

 Marshall & Taylor, PLLC, by Travis R. Taylor for plaintiff-appellee.

 Gailor Hunt Davis Taylor & Gibbs, PLLC, by Jonathan S. Melton and Carrie
 B. Tortora for defendant-appellant.

 MURPHY, Judge.

¶1 Decisions regarding the determination and amount of alimony are left to the

 sound discretion of the trial court. A trial court does not abuse its discretion when it

 considers all relevant factors under N.C.G.S. § 50-16.3A(b) for which evidence is

 offered. Here, the Record reflects the trial court considered all relevant factors under

 N.C.G.S. § 50-16.3A(b), including the parties’ standard of living during the marriage,

 and did not abuse its discretion in determining the dependent spouse is entitled to

 $2,100.00 per month in alimony.
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 BACKGROUND

¶2 Plaintiff Michael Putnam (“Michael”) and Defendant Rebecca Putnam

 (“Rebecca”) were married on 16 June 2001. On 2 March 2017, Michael and Rebecca

 separated, and on 27 July 2018, they divorced. Michael and Rebecca are the parents

 of three minor children.

¶3 After the parties separated, they resolved equitable distribution by entering

 into a consent order, filed 21 May 2018, regarding the distribution of their property.

 As a result of the consent order, Michael was awarded Sequence, Inc. (“Sequence”), a

 validation specialist company Michael and Rebecca formed in 2002, in which Rebecca

 had been a 51% shareholder and Michael had been a 49% shareholder. According to

 the terms of the consent order, Michael became the 100% shareholder in Sequence.

 Rebecca received a distributive award of approximately $3,000,000.00 in exchange

 for Michael retaining Sequence, as well as a payout of $225,000.00 in exchange for

 Michael retaining the parties’ beach house purchased during the marriage. The

 consent order did not resolve the issue of alimony.

¶4 On 11 February 2020, after an alimony trial, the trial court entered its Order

 on Alimony, Temporary Child Support and Attorney’s Fees (“Alimony Order”). The

 Alimony Order designated Michael as the supporting spouse and Rebecca as the

 dependent spouse, and ordered Michael to pay Rebecca $2,100.00 per month in

 alimony, $1,900.00 per month in temporary child support, and $72,617.00 in support
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 arrears at the rate of $1,500.00 per month. Rebecca timely appeals, arguing the trial

 court erred in its computation and award of alimony.1

 ANALYSIS

¶5 Rebecca argues the Alimony Order should be vacated “as to the amount of [her]

 reasonable monthly needs and remand[ed] for entry of a new order.” Rebecca also

 argues “the trial court abused its discretion in the amount of alimony awarded to

 [her].”

¶6 “Decisions regarding the amount of alimony are left to the sound discretion of

 the trial judge and will not be disturbed on appeal unless there has been a manifest

 abuse of that discretion.” Bookholt v. Bookholt, 136 N.C. App. 247, 249-50, 523 S.E.2d

 729, 731 (1999), superseded on other grounds by statute as stated in Williamson v.

 Williamson, 142 N.C. App. 702, 543 S.E.2d 897 (2001). Our review of the trial court’s

 findings of fact is limited to “whether there is competent evidence to support the

 findings of fact and whether the findings support the conclusions of law.” Hartsell v.

 1 In accordance with N.C.G.S. § 50-16.3A(a), “[t]he [trial] court shall award alimony

 to the dependent spouse upon a finding that one spouse is a dependent spouse, that the other
 spouse is a supporting spouse, and that an award of alimony is equitable after considering
 all relevant factors, including those” listed in N.C.G.S. § 50-16.3A(b). N.C.G.S. § 50-16.3A(a)
 (2019). Rebecca does not argue the trial court erred in finding Michael to be a supporting
 spouse and finding her to be a dependent spouse. Rather, Rebecca argues the trial court’s
 procedure in computing her alimony award was error and challenges the amount of her
 alimony award.
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 Hartsell, 99 N.C. App. 380, 385, 393 S.E.2d 570, 573 (1990), aff’d, 328 N.C. 729, 403

 S.E.2d 307 (1991).

 A. Reasonable Monthly Expenses

¶7 In her most updated amended financial affidavit, dated 10 June 2019, Rebecca

 listed her total monthly expenses, including the children’s expenses, as $18,275.71.

 The trial court concluded that some of these expenses were unreasonable, and

 without making any further findings of fact, reduced this number by approximately

 $4,600.00, finding “[Rebecca’s] reasonable monthly expenses, given the standard of

 living during the marriage of the parties, are $13,677.56. This includes the children’s

 monthly expenses.” (Emphasis added).

¶8 N.C.G.S. § 50-16.3A(b) permits the trial court to exercise its discretion in

 determining the amount of alimony and directs the trial court to “consider all relevant

 factors” when making the determination of alimony, including “[t]he standard of

 living of the spouses established during the marriage[.]” N.C.G.S. § 50-16.3A(b)(8)

 (2019). Our Supreme Court has defined the phrase “standard of living” as used in

 N.C.G.S. § 50-16.3A(b)(8) as follows:

 The . . . phrase clearly means more than a level of mere
 economic survival. Plainly, in our view, it contemplates the
 economic standard established by the marital partnership
 for the family unit during the years the marital contract
 was intact. It anticipates that alimony, to the extent it can
 possibly do so, shall sustain that standard of living for the
 dependent spouse to which the parties together became
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 accustomed.

 Williams v. Williams, 299 N.C. 174, 181, 261 S.E.2d 849, 855 (1980).

¶9 Rebecca argues “the trial court failed to consider the parties’ standard of living

 established during the marriage in determining [her] reasonable monthly expenses”

 as required by N.C.G.S. § 50-16.3A(b)(8). Specifically, Rebecca challenges a portion

 of Finding of Fact 57 that states the trial court relied on “the standard of living during

 the marriage of the parties” in calculating her reasonable monthly expenses.

¶ 10 There are numerous findings of fact in the Record that show the trial court

 considered the parties’ standard of living during their marriage, including the

 following:

 17. During the marriage of the parties, [Rebecca] was the
 primary caretaker for the minor children. Except as a
 substitute teacher on occasion at her children’s school,
 Envision Science Academy, [Rebecca] did not work outside
 the home after the birth of the first child.

 18. After the parties’ separation, in October 2017
 [Rebecca] began working as a preschool teacher at Good
 Shephard Lutheran Church. [Rebecca] typically works
 Tuesday through Friday from 9:30 a.m. until 1:30 p.m.
 This allows her to be home with the children after school.

 19. [Rebecca] is currently only working part-time. If
 [Rebecca] were to work a full-time job, she would require
 childcare assistance before and after school.

 ....

 23. After the parties separated, they reached an
 agreement regarding the distribution of their property in
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

May 2018. As a result of this Consent Order, [Michael] was
awarded the Sequence business, and [Rebecca] received
approximately $3,000,000[.00] which she was able to
invest. She also received a payout of $225,000[.00] for the
Beach House, which house was kept by [Michael].

24. The parties sold their marital residence and
[Rebecca] received approximately $300,000[.00] from the
proceeds.

25. [Rebecca] prepared and submitted a Financial
Affidavit. The affidavit was completed in June 2019.

....

49. On her Financial Affidavit, [Rebecca] reported
regular recurring monthly expenses of $16,164.09 at the
time the parties separated. She reported current (as of
June 2019) regular recurring monthly expenses of
$10,036.66 but [Rebecca] testified that her current
expenses are $10,222.73 as of the date of this hearing.

50. [Rebecca] also listed on her Financial Affidavit
additional individual monthly expenses of $10,005.38 at
the date of separation. She listed her current (as of June
2019) individual expenses as $9,198.31. [Rebecca] testified
at this hearing that her individual monthly expenses had
been reduced to $8,052.98.

....

52. In July 2018, [Rebecca] bought a 2[,]500 square foot
townhome on Fawn Lake Drive. She used $395,000[.00] to
purchase this townhome and did so without a mortgage.
This home was in the same district as her children’s
schools.

53. Just prior to this trial, in July 2019, [Rebecca]
bought a new 4[,]200 square foot home for approximately
$720,000[.00]. This home is in a gated community near the
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

former marital residence and is in the same school district
as the parties’ minor children’s schools. [Rebecca] put no
money down and secured an equity line to finance the
home, using her investment account as collateral. Her
monthly payment is $3,131[.00] per month. This mortgage
payment amount does not include monthly homeowner’s
association dues ($83.00), utilities, yard maintenance
($225[.00]) property taxes ($524.66), and insurance costs
($243.00) associated with the property.

....

55. [Rebecca] purchased a 2019 GMC Yukon in October
2018 and [Rebecca’s] automobile loan payment is
$1,184[.00] per month. [Rebecca] listed $376[.00] per
month for auto repairs and maintenance relating to her
new vehicle.

....

58. [Rebecca] will have an average monthly shortfall of
$2,930.00 per month without any consideration for taxes.
This is based on income in the amount of $10,746.58 per
month and expenses of $13,677.56 per month.

....

62. During their marriage, the parties owned a business,
Sequence, [] a validation specialist company which assists
pharmaceutical companies in testing equipment.
[Michael] began the company in 2002. [Rebecca] was a 51%
owner of the company. She assisted with bookkeeping and
performed other tasks for the business until 2016.

63. During their marriage, the parties used income from
Sequence[] to pay personal expenses, such as automobile
loan payments and insurance. The parties were able to live
an extravagant lifestyle during their marriage. They
vacationed frequently and owned a nice home.
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 ....

 66. Some of [Michael’s] personal expenses, such as his
 Ford Expedition, his car insurance and his cell phone are
 paid by Sequence[].

 ....

 71. After the parties’ separation, [Michael] lived briefly
 with his sister, and then rented an apartment. In April
 2018, [Michael] purchased a home on Rosalee [sic] Street
 in Raleigh, North Carolina where he currently resides.

 72. [Michael] completed and served a Financial
 Affidavit in June 2019 and said Affidavit was admitted at
 trial.

 73. Sequence[] currently pays for [Michael’s] health and
 dental insurance. [Michael] pays for the children’s
 medical, dental, and vision insurance at a cost of $398[.00]
 per month.

 74. On his Financial Affidavit, [Michael] listed regular
 recurring monthly expenses as of the date of separation in
 the amount of $16,353[.00]. In addition to his loan
 repayment and his court-ordered support payment, he
 listed his current (as of June 2019) regular monthly
 expenses in the amount of $13,219[.00].

 75. [Michael] reported $12,842[.00] per month in
 individual monthly expenses at the time of separation and
 [Michael] reported current (as of June 2019) individual
 expenses in the amount of $14,197[.00] per month (note:
 the totals were lower on [Michael’s] Financial Affidavit, but
 these are accurate calculations).

(Emphases added).
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

¶ 11 Finding of Fact 63 states “[t]he parties were able to live an extravagant

 lifestyle during their marriage.” This finding of fact is unchallenged by Rebecca.2

 The remainder of the findings of fact listed above discuss how Rebecca was able to

 stay home with the children during the marriage, the types of cars the parties

 purchased during the marriage, and the size of the houses the parties lived in during

 the marriage. The trial court also made findings of fact about how Rebecca will

 continue to stay at home with the children, maintain the same kinds of cars, and live

 in houses of a similar size, as during the marriage. The trial court properly

 considered the parties’ standard of living during their marriage when it calculated

 Rebecca’s reasonable monthly expenses. See Barrett v. Barrett, 140 N.C. App. 369,

 372, 536 S.E.2d 642, 645 (2000) (holding the trial court considered the parties’ marital

 standard of living when it “made explicit findings as to the parties’ respective incomes

 during the marriage, the type of home in which they lived, and the types of family

 vacations they enjoyed”); see also Adams v. Adams, 92 N.C. App. 274, 279-80, 374

 S.E.2d 450, 453 (1988) (“The [trial] judge’s findings as to [the defendant’s] monthly

 gross income and his reasonable living expenses, coupled with the findings as to [the

 plaintiff’s] monthly income and her expenses during the last year of the marriage,

 2 As Rebecca does not challenge this finding of fact, it is binding on appeal.
 See Juhnn
 v. Juhnn, 242 N.C. App. 58, 63, 775 S.E.2d 310, 313 (2015) (“[W]here a trial court’s findings
 of fact are not challenged on appeal, they are deemed to be supported by competent evidence
 and are binding on appeal.”).
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 satisfied the requirement . . . for findings regarding the [parties’] accustomed

 standard of living [during the marriage].”), superseded on other grounds by statute as

 stated in Brannock v. Brannock, 135 N.C. App. 635, 523 S.E.2d 110 (1999).

¶ 12 Rebecca also notes that Michael was continuing to save and invest for

 retirement and contends the parties had a pattern of saving during the marriage.

 Michael’s financial affidavit shows he was investing $1,590.00 per month during the

 marriage and he was investing $1,661.00 per month at the time of trial. Rebecca was

 unemployed after the children were born, so her accumulation of retirement assets

 during the marriage was based solely on Michael’s contributions. Rebecca argues

 “although the trial court made an evidentiary finding regarding [Michael’s] saving

 for retirement, the [trial] court made no ultimate finding regarding [a] pattern of

 savings as part of the accustomed standard of living for purposes of alimony.” We

 disagree.

¶ 13 “Where the parties have established a pattern of saving for retirement as part

 of their accustomed standard of living during the marriage, this expense can be part

 of the standard of living and should be considered for purposes of alimony.” Myers v.

 Myers, 269 N.C. App. 237, 262, 837 S.E.2d 443, 460 (2020). “[A]lthough the parties’

 pattern of savings may not be determinative of a claim for alimony, the trial court

 must at least consider this pattern in determining the parties’ accustomed standard

 of living.” Vadala v. Vadala, 145 N.C. App. 478, 481, 550 S.E.2d 536, 539 (2001).
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

¶ 14 The trial court properly considered the parties’ pattern of saving as part of

 their accustomed standard of living during the marriage, as illustrated in

 unchallenged Findings of Fact 23, 28, 29, 30, and 42. Those findings of fact state:

 23. After the parties separated, they reached an
 agreement regarding the distribution of their property in
 May 2018. As a result of this Consent Order, [Michael] was
 awarded the Sequence business, and [Rebecca] received
 approximately $3,000,000[.00] which she was able to
 invest. She also received a payout of $225,000[.00] for the
 Beach House, which house was kept by [Michael].

 ....

 28. Johnathan Henry is a wealth advisor with the Trust
 Company of the South. He has been assisting [Rebecca]
 with her investments since June 2018 when she initially
 deposited the funds from her distributive award.

 29. Mr. Henry helped [Rebecca] invest her portfolio with
 a “balanced growth” approach. [Rebecca] currently has an
 investment portfolio consisting of approximately seventy
 percent (70%) stocks and thirty percent (30%) bonds. . . .

 30. In June 2019, [Rebecca’s] investment account held
 $2,506,847.63. [Rebecca] earned $26,914.81 in dividends
 and interest between January and June 2019. Her capital
 appreciation was $175,595.20. [Rebecca] paid $9,772.32 in
 fees and took $188,420[.00] in distributions. She also
 deposited $202,532.60 during the same period.

 ....

 42. The [trial] [c]ourt finds that [Rebecca] can safely
 withdraw $10,000[.00] per month from the proceeds of her
 investment account without depleting her estate.
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 The trial court determined Rebecca has the ability to save for retirement to the same

 standard that the parties planned for during the marriage by using her investment

 account. Rebecca does not contest these findings of fact. The trial court properly

 considered the parties’ pattern of savings and retirement contributions as it pertains

 to the parties’ accustomed standard of living.

¶ 15 In further arguing the trial court did not properly consider her reasonable

 monthly expenses, Rebecca challenges Finding of Fact 56, arguing it is insufficient

 because it is “vague and does not enable this Court to determine which expenses the

 trial court reduced.”

¶ 16 Finding of Fact 56 states:

 56. [Rebecca] included some expenses on her affidavit
 which she testified she is no longer paying, such as storage
 unit fees, social memberships, and a life coach. She also
 listed expenses that she did not include in her total such as
 charitable giving. [Rebecca] listed other expenses that
 were not reasonable given the standard of living during the
 marriage, such as the eating out expenses which increased
 after separation, or were non-recurring.

¶ 17 The amount the trial court found as Rebecca’s reasonable monthly expenses,

 $13,677.56, differed from the amount Rebecca listed as current monthly expenses as

 of the date of trial in her amended financial affidavit, $18,275.71. However, “[t]he

 determination of what constitutes the reasonable needs and expenses of a party in an

 alimony action is within the discretion of the trial [court], and [it] is not required to
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 accept at face value the assertion of living expenses offered by the litigants

 themselves.” Bookholt, 136 N.C. App. at 250, 523 S.E.2d at 731. “Implicit in this is

 the idea that the trial judge may resort to his own common sense and every-day

 experiences in calculating the reasonable needs and expenses of the parties.”

 Cunningham v. Cunningham, 171 N.C. App. 550, 564, 615 S.E.2d 675, 685 (2005).

 “The [trial] court is not required to make findings about the weight and credibility

 which it gives to the evidence before it.” Robinson v. Robinson, 210 N.C. App. 319,

 327, 707 S.E.2d 785, 791 (2011).

¶ 18 Rebecca suggests the trial court must produce a redline itemization for all

 reasonable or unreasonable expenses listed on a financial affidavit. This is not what

 is required of the trial court. In Bookholt, we reviewed a defendant’s claim that the

 trial court erred in calculating the monthly needs and expenses of each party:

 In his financial affidavit submitted to the trial court, [the]
 defendant listed $2[,]100[.00] in projected monthly housing
 costs to enable him to attain better housing. The trial
 court, however, considered these projections speculative
 and reduced this figure to $960.50 in finding [the]
 defendant’s total monthly needs and expenses to be
 $2[,]823.35. [The] [d]efendant maintains that this
 amounted to an abuse of the trial judge’s discretion. We
 disagree. . . . Here, the trial court apparently felt the
 $2[,]100[.00] in projected housing costs was unreasonable
 and then reduced that figure to an amount it felt was more
 reasonable. By doing so, we find no abuse in the exercise
 of its discretion.

 [The] [d]efendant also claims error in the trial court’s
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 calculations as to [the] plaintiff’s needs and expenses. In
 her financial affidavit, [the] plaintiff listed her expenses as
 $1[,]941.71 per month. The trial judge concluded that five
 of these expenses were unreasonable and, without making
 any further findings, reduced [the] plaintiff’s figure by
 $625.49. [The] [d]efendant argues that, even though the
 trial court’s reduction ultimately benefitted him, the trial
 court’s calculations are “patently defective” absent
 appropriate findings to explain them. Again we disagree.
 As previously stated, the trial judge is not bound by the
 financial assertions of the parties and may resort to
 common sense and every-day experiences. By reducing
 some of [the] plaintiff’s expenses here, the trial court did
 not abuse its discretion.

 Bookholt, 136 N.C. App. at 250-51, 523 S.E.2d at 731-32 (emphasis added).

¶ 19 Here, as in Bookholt, the trial court provided sufficient detail for us to

 determine it had considered all relevant factors when calculating Rebecca’s

 reasonable monthly needs and expenses. The trial court did not abuse its discretion

 in reducing Rebecca’s monthly expenses and provided sufficient findings of fact for us

 to review on appeal.

 B. Amount of Alimony Award

¶ 20 Rebecca’s second argument pertains to the amount of alimony she was

 awarded. Rebecca does not take issue with the trial court’s finding she is entitled to

 alimony, but rather takes issue with the amount the trial court awarded her in

 alimony, arguing “the trial court abused its discretion in the amount of alimony

 awarded to [her].”
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

¶ 21 “Decisions concerning the amount . . . of alimony are entrusted to the trial

 court’s discretion and will not be disturbed absent a showing that the trial court has

 abused such discretion.” Robinson, 210 N.C. App. at 326, 707 S.E.2d at 791; see also

 Dodson v. Dodson, 190 N.C. App. 412, 415, 660 S.E.2d 93, 96 (2008); Walker v. Walker,

 143 N.C. App. 414, 422, 546 S.E.2d 625, 630 (2001). “The [trial] court is not required

 to make findings about the weight and credibility which it gives to the evidence before

 it.” Robinson, 210 N.C. App. at 327, 707 S.E.2d at 791.

¶ 22 The trial court concluded “[Michael] is a supporting spouse and [Rebecca] is a

 dependent spouse within the meaning of [N.C.G.S.] § 50-16A.” After making that

 determination, the trial court was required to “consider all relevant factors” in

 determining the amount and duration of alimony. N.C.G.S. § 50-16.3A(b) (2019).

 N.C.G.S. § 50-16.3A(b) enumerates sixteen relevant, but non-exclusive factors,

 including:

 (1) The marital misconduct of either of the spouses. . . .;

 (2) The relative earnings and earning capacities of the
 spouses;

 (3) The ages and the physical, mental, and emotional
 conditions of the spouses;

 (4) The amount and sources of earned and unearned
 income of both spouses, including, but not limited to,
 earnings, dividends, and benefits such as medical,
 retirement, insurance, social security, or others;

 (5) The duration of the marriage;
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

(6) The contribution by one spouse to the education,
training, or increased earning power of the other spouse;

(7) The extent to which the earning power, expenses, or
financial obligations of a spouse will be affected by reason
of serving as the custodian of a minor child;

(8) The standard of living of the spouses established during
the marriage;

(9) The relative education of the spouses and the time
necessary to acquire sufficient education or training to
enable the spouse seeking alimony to find employment to
meet his or her reasonable economic needs;

(10) The relative assets and liabilities of the spouses and
the relative debt service requirements of the spouses,
including legal obligations of support;

(11) The property brought to the marriage by either spouse;

(12) The contribution of a spouse as homemaker;

(13) The relative needs of the spouses;

(14) The federal, State, and local tax ramifications of the
alimony award;

(15) Any other factor relating to the economic
circumstances of the parties that the court finds to be just
and proper.

(16) The fact that income received by either party was
previously considered by the court in determining the value
of a marital or divisible asset in an equitable distribution
of the parties’ marital or divisible property.
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 N.C.G.S. § 50-16.3A(b) (2019). “[T]he [trial] court shall make a specific finding of fact

 on each of the factors [listed above] if evidence is offered on that factor.” N.C.G.S. §

 50-16.3A(c) (2019).

¶ 23 Here, the trial court made findings of fact reflecting that when the trial court

 determined the amount of alimony awarded to Rebecca, it considered all the factors

 for which evidence was offered.

¶ 24 Pursuant to N.C.G.S. § 50-16.3A(b)(1), the trial court considered “marital

 misconduct of either of the spouses,” as illustrated in Findings of Fact 89, 90, 91, 92,

 and 93:

 89. The parties had difficulties during their marriage.
 [Michael] confessed to watching too much pornography. In
 2015, [Michael] attended a conference in Minnesota to
 treat his addiction. He also joined a support group.

 90. Approximately eight months before separation,
 [Rebecca] moved into the basement and began asking
 [Michael] to leave the home.

 91. [Michael] then began restricting [Rebecca’s] access
 to company data and he withheld funds from [Rebecca].

 92. [Rebecca] set up a video camera in the home without
 [Michael’s] knowledge and changed the lock on the safety
 deposit box.

 93. The [trial] [c]ourt does not find that these things rise
 to the level of marital fault. There was no credible evidence
 of illicit sexual conduct during the marriage.

 See N.C.G.S. § 50-16.3A(b)(1) (2019).
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

¶ 25 Pursuant to N.C.G.S. § 50-16.3A(b)(2), the trial court considered “[t]he relative

 earnings and earning capacities of the spouses,” as illustrated in Findings of Fact 18,

 19, 20, 43, and 44:

 18. After the parties’ separation, in October 2017 []
 [Rebecca] began working as a preschool teacher at Good
 Shephard Lutheran Church. [Rebecca] typically works
 Tuesday through Friday from 9:30 a.m. until 1:30 p.m.
 This allows her to be home with the children after school.

 19. [Rebecca] is currently only working part-time. If
 [Rebecca] were to work a full-time job, she would require
 childcare assistance before and after school.

 20. In 2018 [Rebecca] earned $8,959.39. She is
 currently working part-time as a preschool teacher.

 ....

 43. [Rebecca] is currently earning $8,959[.00] per year
 from her employment. The [trial] [c]ourt cannot find that
 [Rebecca] is acting in bad faith and will not impute income.

 44. [Rebecca’s] monthly income, for purposes of
 calculating child support and alimony, is $128,959[.00]
 annually (or $10,748.58 per month).

 See N.C.G.S. § 50-16.3A(b)(2) (2019).

¶ 26 Pursuant to N.C.G.S. § 50-16.3A(b)(3), the trial court considered “[t]he ages

 and the physical, mental, and emotional conditions of the spouses,” as illustrated in

 Findings of Fact 84, 95, and 96:

 84. In determining the amount and duration of
 alimony, th[e] [trial] [c]ourt has considered, among other
 things, the duration of the parties[’] marriage, the relative
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 ages and health of the parties, [Rebecca’s] role as primary
 caregiver to the parties’ minor children, the financial needs
 of the parties, the incomes and earnings of the parties, the
 earning capacities of the parties, and the reasonable
 expenses of the parties.

 ....

 95. During the marriage, [Rebecca] had several health
 conditions, including ADHD, hearing loss, and “XLH.” She
 regularly took medications.

 96. The parties are close in age. [Rebecca] is 45 years
 old and [Michael] is 43.

 See N.C.G.S. § 50-16.3A(b)(3) (2019).

¶ 27 Pursuant to N.C.G.S. § 50-16.3A(b)(5), the trial court considered “[t]he

 duration of the marriage,” as illustrated in Findings of Fact 84 and 97:

 84. In determining the amount and duration of
 alimony, th[e] [trial] [c]ourt has considered, among other
 things, the duration of the parties[’] marriage, the relative
 ages and health of the parties, [Rebecca’s] role as primary
 caregiver to the parties’ minor children, the financial needs
 of the parties, the incomes and earnings of the parties, the
 earning capacities of the parties, and the reasonable
 expenses of the parties.

 ....

 97. Based on the length of the marriage, the relative age
 and health of the parties, the age of the children (16, 15,
 and 12), and the time [Rebecca] needs to re-enter the work
 force, the [trial] [c]ourt finds that an alimony payment
 should be made for a period of 6 years.

 See N.C.G.S. § 50-16.3A(b)(5) (2019).
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

¶ 28 Pursuant to N.C.G.S. § 50-16.3A(b)(8), the trial court considered “[t]he

 standard of living of the spouses established during the marriage,” as illustrated in

 Finding of Fact 63:

 63. During their marriage, the parties used income from
 Sequence[] to pay personal expenses, such as automobile
 loan payments and insurance. The parties were able to live
 an extravagant lifestyle during their marriage. They
 vacationed frequently and owned a nice home.

 See N.C.G.S. § 50-16.3A(b)(8) (2019).

¶ 29 Pursuant to N.C.G.S. § 50-16.3A(b)(9), the trial court considered “[t]he relative

 education of the spouses and the time necessary to acquire sufficient education or

 training to enable the spouse seeking alimony to find employment to meet his or her

 reasonable economic needs,” as illustrated in Finding of Fact 84:

 84. In determining the amount and duration of
 alimony, th[e] [trial] [c]ourt has considered, among other
 things, the duration of the parties[’] marriage, the relative
 ages and health of the parties, [Rebecca’s] role as primary
 caregiver to the parties’ minor children, the financial needs
 of the parties, the incomes and earnings of the parties, the
 earning capacities of the parties, and the reasonable
 expenses of the parties.

 See N.C.G.S. § 50-16.3A(b)(9) (2019).

¶ 30 Pursuant to N.C.G.S. § 50-16.3A(b)(10), the trial court considered “[t]he

 relative assets and liabilities of the spouses and the relative debt service

 requirements of the spouses,” as illustrated in Findings of Fact 65 and 74:
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 65. In order to buyout [Rebecca’s] portion of the
 business, [Michael] borrowed three million dollars
 ($3,000,000[.00]) in funds from Sequence[]. Each month,
 [Michael] is receiving $80,000[.00] in distributions from the
 company. Of that amount, [Michael] uses $53,906[.00] per
 month to repay the loan to Sequence, [] leaving him with a
 net distribution of $26,094[.00] per month. The loan to
 Sequence will be paid off in June 2023.

 ....

 74. On his Financial Affidavit, [Michael] listed regular
 recurring monthly expenses as of the date of separation in
 the amount of $16,353[.00]. In addition to his loan
 repayment and his court-ordered support payment, he
 listed his current (as of June 2019) regular monthly
 expenses in the amount of $13,219[.00].

 See N.C.G.S. § 50-16.3A(b)(10) (2019).

¶ 31 Pursuant to N.C.G.S. § 50-16.3A(b)(12), the trial court considered “[t]he

 contribution of a spouse as homemaker,” as illustrated in Finding of Fact 17:

 17. During the marriage of the parties, [Rebecca] was
 the primary caretaker for the minor children. Except as a
 substitute teacher on occasion at her children’s school,
 Envision Science Academy, [Rebecca] did not work outside
 the home after the birth of the first child.

 See N.C.G.S. § 50-16.3A(b)(12) (2019).

¶ 32 Pursuant to N.C.G.S. § 50-16.3A(b)(13), the trial court considered “[t]he

 relative needs of the spouses,” as illustrated in Findings of Fact 61 and 84:

 61. The [trial] [c]ourt finds that [Rebecca’s] total
 monthly need is $4,000[.00] per month.

 ....
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 84. In determining the amount and duration of
 alimony, th[e] [trial] [c]ourt has considered, among other
 things, the duration of the parties[’] marriage, the relative
 ages and health of the parties, [Rebecca’s] role as primary
 caregiver to the parties’ minor children, the financial needs
 of the parties, the incomes and earnings of the parties, the
 earning capacities of the parties, and the reasonable
 expenses of the parties.

 See N.C.G.S. § 50-16.3A(b)(13) (2019).

¶ 33 Finally, pursuant to N.C.G.S. § 50-16.3A(b)(16), the trial court considered

 “[t]he fact that income received by either party was previously considered by the court

 in determining the value of a marital or divisible asset in an equitable distribution of

 the parties’ marital or divisible property,” as illustrated in Findings of Fact 23 and

 65:

 23. After the parties separated, they reached an
 agreement regarding the distribution of their property in
 May 2018. As a result of this Consent Order, [Michael] was
 awarded the Sequence business, and [Rebecca] received
 approximately $3,000,000[.00] which she was able to
 invest. She also received a payout of $225,000[.00] for the
 Beach House, which house was kept by [Michael].

 ....

 65. In order to buyout [Rebecca’s] portion of the
 business, [Michael] borrowed three million dollars
 ($3,000,000[.00]) in funds from Sequence[]. Each month,
 [Michael] is receiving $80,000[.00] in distributions from the
 company. Of that amount, [Michael] uses $53,906[.00] per
 month to repay the loan to Sequence, [] leaving him with a
 net distribution of $26,094[.00] per month. The loan to
 Sequence will be paid off in June 2023.
 PUTNAM V. PUTNAM

 2021-NCCOA-401

 Opinion of the Court

 See N.C.G.S. § 50-16.3A(b)(16) (2019).

¶ 34 The findings of fact listed above are unchallenged and binding on appeal.

 Juhnn, 242 N.C. App. at 63, 775 S.E.2d at 313. No evidence was offered for the

 remaining factors under N.C.G.S. § 50-16.3A(b)(4), (6), (7), (11), (14), and (15) and the

 trial court was not required to make findings as to these factors. N.C.G.S. § 50-

 16.3A(c) (2019). The trial court considered all relevant and required statutory factors

 in determining the alimony payment to Rebecca and did not abuse its discretion in

 awarding alimony in the amount of $2,100.00 per month to Rebecca.

 CONCLUSION

¶ 35 The trial court did not abuse its discretion in calculating Rebecca’s reasonable

 monthly expenses. Additionally, the trial court did not abuse its discretion in

 ordering Michael to pay Rebecca $2,100.00 per month in alimony. The Order on

 Alimony, Temporary Child Support and Attorney’s Fees is affirmed.

 AFFIRMED.

 Judges TYSON and JACKSON concur.